**MORGAN DRIVE AWAY, INC., et al.,**
**Appellants,**

**v.**

**RAILROAD COMMISSION of Texas et al.,**
**Appellees.**

**No. 11913.**

Court of Civil Appeals of Texas,
Austin.

July 12, 1972.

Rehearing Denied Aug. 2, 1972.

Robinson, Felts, Starnes & Nations, Mert Starnes, Austin, for appellants.

Crawford C. Martin, Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., James H. Cowden, Rex H. White, Jr., Asst. Attys. Gen., Lanham, Hatchell & Sedberry, Thomas F. Sedberry, Austin, for appellees.

O'QUINN, Justice.

Two protesting carriers have brought this appeal from judgment of the district court denying them relief from an order of the Railroad Commission which granted a certificate to Warfield Walker authorizing him to transport mobile homes and campers from all points within one hundred miles of Huntsville, Texas, to all points in

Texas, excepting shipments originating in Harris County.

Appellants are Morgan Drive Away, Inc., and National Trailer Convoy, Inc., holders of specialized motor carrier certificates which authorize them to operate throughout the state. Appellee Warfield Walker, doing business as Mobile Home Transports, proposed to station his equipment at Huntsville and operate with points of origin within a one hundred mile radius of Huntsville. The Railroad Commission's order authorized Walker to operate in accordance with these proposals, except as to shipments originating in Harris County.

After hearing before the trial court without intervention of a jury, the court entered an order vacating a temporary restraining order previously issued by the court in May of 1971, and continued in force by agreement of the parties, which order enjoined Walker from operating pending final hearing. The trial court found the law and facts to be with appellees, who were defendants below, and found a public need for the proposed service and substantial evidence to sustain the order of the Railroad Commission.

Validity of the Railroad Commission's order, issued April 23, 1971, is attacked by appellants under four points of error. We will overrule all points of error and affirm the judgment of the trial court.

At the outset appellants insist that there is no substantial evidence reasonably supporting the order of the Commission granting Walker's application.

Appellants are the only two carriers in the state authorized to operate throughout Texas in the specialized field of handling transport of mobile homes and trailers, and under the Commission order attacked in this case Walker is their only competitor in the disputed area surrounding Huntsville for a radius of one hundred miles. Neither of the appellants owns its equipment, and both depend upon contractors who supply equipment and drivers in furnishing the services authorized to be performed.

National Trailer Convoy has fourteen terminals in Texas, all of which are operated by women who in some instances are the wives of drivers contracting with National to perform the transportation services. The company has no full-time employees in Texas except these agents. National was operating sixty leased vehicles in the state at the end of 1970 and at the time of the Commission's order in April of 1971 the company operated ninety-three trucks in Texas. National advertises in trade journals and in telephone directories. Within the disputed territory around Huntsville, National advertises only in Bryan, Jacksonville, Houston, Lufkin and La Porte. A witness for National estimated that sixty percent of the company's operation is devoted to movement of new trailers from manufacturers. Within one hundred miles of Huntsville the company operates only one terminal, located at Pasadena in Harris County.

Morgan Drive Away, the other statewide carrier of mobile homes, operates sixteen terminals in Texas and a district office in San Antonio from which agents are reached by telephone or TWX. Advertising in telephone directories is published in Bryan and Houston. About forty-five percent of the company's traffic originates at manufacturing plants.

A witness who operates a mobile home sales business in Lufkin and another in Livingston testified that the existence of Sam Rayburn Reservoir, Lake Livingston, and other recreational areas accounted for "roughly a third of our economy." The witness related increased sales of mobile homes and trailers to faculty and students in colleges and universities in the area to greater demand for movement of mobile homes and trailers. At least ten cities and towns with colleges or universities are located within the Huntsville territory in which Walker was authorized to operate.

Witnesses for National and for Morgan Drive Away testified they were not aware of any increase in trailer movements in relation to the location of recreational areas and colleges in the disputed territory.

Three witnesses testified to complaints they had concerning services as rendered by both National and Morgan Drive Away. Appellants urge that such testimony lacks weight because all complaints registered relate to incidents occurring fifteen months or more prior to the Commission's order approving Walker's application.

We have not attempted here to set out in complete detail all the evidence, but we find in brief that appellants operate only two terminals within the disputed area; that the two terminals conveniently adjacent to the Huntsville circle in which Walker may operate have been reduced, in one instance, or abandoned, in the other; that appellants, together with Walker, are the only carriers authorized to service the designated area; that the forty-five counties surrounding Huntsville, in Walker County, have experienced a substantial increase in extensive recreational lakes and similar projects and include a large number of colleges and universities; and that public witnesses testifying clearly enumerated service complaints against the appellants.

■ We conclude that the order of the Commission is supported by substantial evidence and that in granting authority to Walker the Commission's action was not arbitrary or capricious and was not taken in disregard of the facts.

Appellants contend that evidence of prior unlawful operations by Walker disqualify the applicant from receiving authority from the Commission. The protesting companies insist that "Walker failed to establish his fitness to conduct the operations for which a certificate was issued" in view of a history of illegal conduct beginning in 1969.

Witnesses in behalf of Walker testified that on occasions they had called on Walker for services, some being when National or Morgan Drive Away failed or was slow to perform. Walker admitted that he had been performing services the Commission authorized by its order.

Appellants rely on decisions involving the Interstate Commerce Commission and its policy not to "reward an applicant who has flouted the regulatory authority by extending its activities . . . into an area for which no authority had yet been obtained." A B C Freight Forwarding Corporation v. United States, 125 F.Supp. 926 (S.D.N.Y.1954), affirmed 348 U.S. 967, 75 S.Ct. 531, 99 L.Ed. 753. Appellants argue that in view of the evidence, the cited decisions, and Article 911b, Vernon's Anno.Tex.Civ.Sts., Walker failed to establish his fitness for the certificate.

Appellees argue that the proceedings in this case did not involve the nature or extent of Walker's alleged illegal operations, such being a subject outside the jurisdiction of the Commission. Powers of arrest and prosecution, appellees point out, are expressly delegated to the Department of Public Safety under Article 1690b, Vernon's Anno.Tex. Penal Code, originally section 16 of the Motor Carrier Act (Art. 911b), but codified in the Penal Code.

■ The Railroad Commission's authority is over rate regulation, and we are not advised of any policy established by the Commission to declare prior illegal operations a part of the criteria for determining fitness. We agree with the Commission that this proceeding is not concerned with Walker's past operations, since no policy exists making such operations a subject of consideration in determining fitness of an applicant. Moreover, the record is lacking in a clear showing of the manner and circumstances by which Walker's prior activities were in violation of Article 911b. In the absence of some established policy and a clear showing of the violations involved, we decline to consider further the

question of declaring Walker ineligible for the certificate granted by the Commission.

Fitness of the applicant was found by the Commission to include Walker's "financial responsibility" and the fact that "equipment proposed to be used" met requirements of the law "in regard to safety devices, dimensions, etc."

Under their third point of error appellants attack the Commission's order as failing to set forth full and complete fact findings on the statutory issues of inadequacy of existing competitive services or public need for the proposed new service. In their contention appellants rely in the main on the rule of Miller v. Railroad Commission, 363 S.W.2d 244 (Tex.Sup. 1963).

■ The findings in *Miller,* being in the main recitations in a form printed in advance for general use, clearly did "not provide sufficient findings of basic facts from which the courts can determine if reasonable grounds existed for issuance of the order." (363 S.W.2d 246, 247) We have examined the order of the Commission in this case, consisting of nearly seven typed pages, and have reviewed the summary of testimony, as well as the detailed findings, and conclude that the findings are thorough and complete. The findings adequately meet the test "that a court upon reading them can fairly and reasonably say that they either do or do not support the required ultimate statutory findings of inadequacy of the services and facilities of existing carriers and a genuine public need for the proposed service." Miller v. Railroad Commission, *supra,* 363 S.W.2d 246.

Under their fourth and final point appellants contend that they were denied due process of law through the Commission's failure to abide by its rules of practice and procedure. The specific rules appellants insist were violated are Rule 25 dealing with postponements, Rule 29B concerning order of procedure, and Rule 48 with respect to service of orders.

Appellants complain that after Walker's oral motion for continuance of the hearing in progress at Austin and for further hearing in Huntsville, the Commission overruled the motion but suggested it "would accept properly taken depositions in lieu of further hearing," and that thereafter oral depositions were taken in Huntsville, followed by further hearing in Austin.

Appellants also complain that after the Commission's order was issued April 23, 1971, the appellants were not served with notice required by Rule 48 and first learned that the order had been issued upon making independent inquiry at the Commission offices on April 29.

■ We have examined the record for showing by appellants that they suffered loss of or damage to their substantive rights by reason of deviations by the Commission from the Rules of procedure and notice and we find no such proof. The record does not reveal that appellants were denied the right to present evidence or that the Commission issued its certificate without benefit of a hearing. We find no prohibition in Rules 25 and 29 against continuation of hearings or the holding of multiple hearings in any single proceeding. On the contrary, it appears that these Rules under their broad language accommodate instances similar to the proceeding of which appellants complain.

We are unable to discover any abuse of the Commission's administrative discretion in such matters, and hold that the hearing procedures appellants object to were permissible under the facts of the case.

Under Rule 48 a copy of the Commission's order is required to "be served forthwith upon all parties." It is true, as appellants point out, that notice to appellants was not given by the Commission advising that its order had been issued, and appellants learned of the order about a week later. Upon learning of the order, appellants filed suit, and on May 1, 1971, succeeded in temporarily restraining Walker's use of the certificate. Thereafter

Walker agreed to two continuances of the restraining order which extended the hearing on appellants' application for temporary and permanent injunction until September 8, 1971. For the period of restraint Walker did not operate, and the parties were in the same positions they would have held if no certificate had been authorized. Walker did not begin operation until the trial court set aside the restraining order by judgment entered September 21, 1971.

Procedural steps required of the Commission by statute, related to hearing, considering and determining applications, are held to be jurisdictional, and breach of these requirements will render void the order of the Commission. (Art. 911b, sec. 5a(d); Kerrville Bus Co. v. Continental Bus System, 208 S.W.2d 586, 589 (Tex. Civ.App.Austin 1947, writ ref. n.r.e., and cases there cited). Appellants argue they were injured as a matter of law when Walker "conducted operations directly competitive with protestants for approximately one week." We do not regard the failure of the Commission to give notice to appellants that Walker's certificate was effective as an irregularity extending to or affecting the Commission's jurisdiction.

The federal cases relied on by appellants involve substantive rights of the complaining party affecting the opportunity fairly to prepare cross examination, denial of decision by a fully participating board, or violation of rights against self incrimination. Appellants have not shown that neglect or failure of the Commission to advise them of the Commission's decision, after due notice, hearing, and decision, was in any way reasonably calculated to cause and probably did cause the rendition of an improper order. A burden of the same gravity is placed on parties complaining of action by a trial court, and to require the burden of appellants under the circumstances of this case does not to us appear unfair or unreasonable.

The judgment of the trial court is affirmed.